1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHEILA MAHONEY-GARCIA,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:14-cv-05599-RBL-KLS

REPORT AND RECOMMENDATION

Noted for May 1, 2015

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On August 22, 2011, plaintiff filed an application for disability insurance benefits, alleging disability as of August 5, 2011. *See* Dkt. 8, Administrative Record ("AR") 10. That

REPORT AND RECOMMENDATION - 1

application was denied upon initial administrative review on April 3, 2012, and on reconsideration on August 14, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on January 8, 2013, at which plaintiff, unrepresented by counsel, appeared and testified, as did a lay witness and a vocational expert. *See* AR 25-51.

In a decision dated February 8, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 10-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 25, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981. On July 26, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on October 8, 2014. *See* Dkt. 8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings, because the ALJ erred in finding her fibromyalgia to be a non-severe impairment, and in discounting her credibility. Plaintiff further argues reversal and remand is warranted in light of additional evidence she submitted to the Appeals Council. For the reasons set forth below, the undersigned agrees reversal and remand for further administrative proceedings is warranted for the reasons asserted, and therefore recommends the Court do so.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

1  ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal

2  standards were not applied in weighing the evidence and making the decision.") (citing *Brawner*

3  *v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

4       Substantial evidence is "such relevant evidence as a reasonable mind might accept as

5  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation

6  omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

7  supported by inferences reasonably drawn from the record."). "The substantial evidence test

8  requires that the reviewing court determine" whether the Commissioner's decision is "supported

9

10 by more than a scintilla of evidence, although less than a preponderance of the evidence is

11 required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

12 admits of more than one rational interpretation," the Commissioner's decision must be upheld.

13 *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

14 sufficient to support either outcome, we must affirm the decision actually made.") (quoting

15 *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

16

17 I.   The ALJ's Step Two Determination

18       Defendant employs a five-step "sequential evaluation process" to determine whether a

19 claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled

20 at any particular step thereof, the disability determination is made at that step, and the sequential

21

22 _____

23 [1] As the Ninth Circuit has further explained:

24        . . . It is immaterial that the evidence in a case would permit a different conclusion than that
        which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
25      substantial evidence, the courts are required to accept them. It is the function of the
        [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
        not try the case de novo, neither may it abdicate its traditional function of review. It must
26      scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
        rational.  If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

1    evaluation process ends. *See id.* At step two of the evaluation process, the ALJ must determine if

2    an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not

3    "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20

4    C.F.R. § 404.1520(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL

5    374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20

6    C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

7

8         An impairment is not severe only if the evidence establishes a slight abnormality that has

9    "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

10   56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841

11   F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their

12   symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d

13   1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  The step two

14   inquiry described above, however, is a *de minimis* screening device used to dispose of groundless

15   claims. *See Smolen*, 80 F.3d at 1290.

16

17        The ALJ in this case found plaintiff had severe impairments consisting of an affective

18   disorder and degenerative disk disease of the cervical and lumbar spine. *See AR 12*. The ALJ

19   further found in relevant part that:

20
          The record also includes a diagnosis of fibromyalgia with reported symptoms
21        of fatigue, persistent muscle pain, and poor concentration (6F; 10F; 15F).
          However, I find that fibromyalgia is not a medically determinable impairment
22        because the diagnosis is not substantiated by the diagnostic criteria required
          by SSR 12-2[p, 2012 WL 3104869].
23
          Specifically, the record does [sic] show that an acceptable medical source
24        diagnosed the condition based on the requisite 11 of 18 positive tender point
          findings. To the contrary, an orthopedic evaluation in March 2012 seemed to
25        rule out the diagnosis because it indicated tenderness at 0 of 18 points (12F).
          In any event, the objective evidence does not reflect any greater functional
26

REPORT AND RECOMMENDATION - 4

1    limitations from the alleged fibromyalgia than are already included in the
2    residual functional capacity below.

3    AR 13. Plaintiff argues the ALJ failed to consider all of the criteria for evaluating the existence

4    of fibromyalgia as a medically determinable impairment set forth in SSR 12-2p, in determining

5    her fibromyalgia diagnosis did not meet those criteria. Specifically, plaintiff asserts the ALJ did

6    not properly consider those set forth in Section II.B of that ruling, and therefore erred in finding

7    her fibromyalgia was not a severe impairment. The undersigned agrees.

8        Fibromyalgia will be found to be a medically determinable impairment if it is diagnosed

9    by a physician and the criteria of either Section II.A or Section II.B of SSR 12-2p are met, and

10   those criteria are "not inconsistent with the other evidence in the . . . record." 2012 WL 3104869,

11   at *2. Section II.B reads in relevant part:

12

13        B. . . . [W]e may find that a person has an [medically determinable
         impairment] of [fibromyalgia] if he or she has all three of the following
14        criteria:

15        1. A history of widespread pain[2] . . . ;

16        2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or
17        co-occurring conditions, especially manifestations of fatigue, cognitive or
         memory problems ("fibro fog"), waking unrefreshed, depression, anxiety
18        disorder, or irritable bowel syndrome; and

19        3. Evidence that other disorders that could cause these repeated manifestations
20        of symptoms, signs, or co-occurring conditions were excluded . . . .

21   *Id.* at *3 (internal footnotes omitted). Although as  noted above the ALJ mentioned the criteria of

22   SSR 12-2p in general, and noted the record did not support a diagnosis of fibromyalgia based on

23

24

25

26   _____

     [2] This is defined as "pain in all quadrants of the body (the right and left sides of the body, both above and below the
     waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or
     that persisted) for at least 3 months," but which "may fluctuate in intensity and may not always be present." *Id.*

REPORT AND RECOMMENDATION - 5

the 11 of 18 positive trigger points required by Section II.A of that ruling, [3] he made no mention

of the specific criteria set forth in Section II.B thereof. *See* AR 13. As such, it is far from clear

that he actually considered them as required by SSR 12-2p.

Defendant argues the only physician in the record to actually conduct an examination of

plaintiff was Gary Gaffield, D.O., who opined that the criteria for a diagnosis of fibromyalgia

were not met on the basis that she had zero trigger points. *See* AR 413-17; SSR 12-2p, 2012 WL

3104869, at \*2 (evidence needed to establish fibromyalgia as medically determinable impairment

must come from physician and "must document that the physician reviewed the person's medical

history and conducted a physical exam"). But while the physical examination findings contained

in the progress notes of Carolyn K. Day, M.D., plaintiff's treating physician, may not have been

as extensive or in depth as those of Dr. Gaffield, they do indicate a physical examination of at

least some sort was conducted by Dr. Day on many of the occasions she saw plaintiff,[4] at which

times a diagnosis of fibromyalgia was offered.[5] *See* AR 323-337, 402-03, 433-36.

Those progress notes along with other medical evidence in the record suggests, contrary

to defendant's assertion, plaintiff may satisfy the Section II.B.1-B.2 criteria for establishing the

existence of fibromyalgia. That is, there is evidence of a history of widespread pain for a period

lasting at least three months, as well as repeated manifestations of six or more fibromyalgia

symptoms, including fatigue, trouble focusing eyes, upset stomach, headaches, global body pain,

---

[3] Plaintiff does not argue the Section II.A criteria are satisfied. Nor does the medical record that was before the ALJ indicate they were satisfied, as it contains no clear evidence of "[a]t least 11 positive tender points on physical examination." 2012 WL 3104869, at \*2; *see, e.g.,* AR 280 (finding presence of "[t]riggers", but failing to indicate exactly how many); 417 ("zero trigger points").

[4] SSR 12-2p does not set forth any particular requirements in regard to the physical examination to be performed by the physician. *See* 2012 WL 3104869, at \*2.

[5] Defendant asserts the record shows Dr. Day merely *accepted* the diagnosis of fibromyalgia, rather than diagnosing that condition herself. To the extent that *accepting* a diagnosis is different from diagnosing a condition, it is clear Dr. Day was of the opinion that plaintiff had fibromyalgia. *See* AR 323-337, 402-03, 433-36.

REPORT AND RECOMMENDATION - 6

1  dizziness, mental confusion and fogginess, and depression. See AR 255, 299, 313, 324, 326-28,

2  330-35, 372, 378-79, 398, 402-03, 409, 412, 423, 433-37, 439; SSR 12-2p, 2012 WL 3104869, at

3  *2-*3 and n. 9-10. While much of this evidence is based on plaintiff's own self-reporting, SSR

4  12-2p make clear that the claimant's symptoms are to be considered along with the claimant's

5  signs or co-occurring conditions (see 2012 WL 3104869, at *3), and as discussed below the ALJ

6  erred in discounting plaintiff's credibility in this case.

7          Defendant further argues the record fails to show other disorders that could have caused

8  plaintiff's signs, symptoms or co-occurring conditions. See id. It is true that there is no definitive

9  statement from a treating or other physician in the record expressly excluding other disorders.

10  SSR 12-2p, however, does not specifically require that level of certainty to determine whether

11  the criteria of Section II.B.3 have been met. It is true as defendant notes that Dr. Day commented

12  at one point that she suspected some of plaintiff's symptoms might be "coming from hormonal

13  instability as well." See AR 331; see also AR 434. At least one other medical source considered

14  other possible causes as well. See AR 301. But Dr. Day's progress notes also repeatedly state:

15  "Extensive autoimmune testing without clear [diagnosis]." See AR 324, 326-28, 331-33, 335,

16  337, 402-03, 433-36. Although admittedly this statement does not actually state other diagnoses

17  have been excluded, neither does it clearly suggest other possible diagnoses and certainly could

18  indicate the absence of such possible causes for plaintiff's symptoms.

19          The ALJ at the very least should have addressed this evidence and the criteria of Section

20  II.B. in determining whether or not plaintiff's fibromyalgia was a medically determinable severe

21  impairment. This is particularly true given that plaintiff was unrepresented in this matter during

22  the administrative review phase of her case. See Widmark v. Barnhart, 454 F.3d 1063, 1068-69

23  (9th Cir. 2006) (where claimant is unrepresented "it is incumbent upon the ALJ to scrupulously

REPORT AND RECOMMENDATION - 7

and conscientiously probe into, inquire of, and explore all the relevant facts," as well as remain

"especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are

elicited"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has duty "to fully

and fairly develop the record and to assure that the claimant's rights are considered," and "must

be especially diligent in exploring for all the relevant facts" when claimant is not represented).

The failure of the ALJ to do so here was error.

Moreover, the undersigned finds that error to be harmful. An error is harmless only if it is

"inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner,*

*Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Parra v. Astrue*, 481 F.3d

742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's

ultimate decision."). An error at step two is not harmful if the ALJ continues with the sequential

disability evaluation process, and does not err in evaluating the claimant's impairments and

limitations at the later steps thereof. *See Hubbard v. Astrue*, 2010 WL 1041553 *1 (9th Cir.

2010); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 682

(9th Cir. 2005). While the ALJ did continue with the sequential evaluation process in this case,

as discussed below he erred in finding plaintiff to be not fully credible regarding her subjective

complaints, which if credited offer support for her allegation that the symptoms and limitations

she experiences due to her fibromyalgia are disabling. This in turn calls into question the ALJ's

findings concerning plaintiff's residual functional capacity[6] and her ability to perform other jobs

existing in significant numbers in the national economy at step five.[7]

---

[6] If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four of that process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.* It thus is what the claimant "can still do despite his or her limitations." *Id.* A claimant's residual functional capacity is

REPORT AND RECOMMENDATION - 8

1  | II.      The ALJ's Assessment of Plaintiff's Credibility

2           Questions of credibility are solely within the control of the ALJ. *See Sample v.*

3  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this

4  credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a

5  credibility determination where that determination is based on contradictory or ambiguous

6  evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should

7  properly be discounted does not render the ALJ's determination invalid, as long as that

8  determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148

9  (9th Cir. 2001).

10          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

11 reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

12 The ALJ "must identify what testimony is not credible and what evidence undermines the

13 claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless

14 affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

15 claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a

---

the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* In assessing a claimant's RFC, the ALJ is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Because the ALJ erred in discounting plaintiff's credibility, it cannot be said that the ALJ properly considered all of her symptom-related limitations and restrictions in assessing her RFC, and therefore it also cannot be said that the ALJ's RFC assessment (*see* AR 14) is supported by substantial evidence.

[7] If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). But because the ALJ erred in discounting plaintiff's credibility, and thus in assessing plaintiff's RFC, his step five determination – which is based on the limitations set forth in that assessment (*see* AR 18-19) – also cannot be said to be supported by substantial evidence and therefore free of error.

REPORT AND RECOMMENDATION - 9

whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ in this case discounted plaintiff's credibility in part because her allegations of disabling symptoms and limitations were inconsistent with the objective medical evidence in the record. *See* AR 15-16. A determination that a claimant's complaints are inconsistent with the objective medical evidence can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Security Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, however, the ALJ failed to properly consider whether plaintiff met the criteria for establishing the existence of fibromyalgia as a medically determinable severe impairment, including the medical evidence in the record supporting that diagnosis. This error, therefore, calls into question the ALJ's reliance on that evidence to discount plaintiff's credibility.

Even if inconsistency with the medical evidence in the record can be said to be a proper basis for finding plaintiff to be less than fully credible here, a claimant's pain or other testimony may not be rejected *solely* because the degree of pain or symptom severity alleged is unsupported by the medical evidence. *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.2001); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The ALJ did provide two other reasons for discounting plaintiff's

REPORT AND RECOMMENDATION - 10

credibility, but neither are supported by substantial evidence, let alone clear and convincing.

The ALJ, for example, discounted plaintiff's credibility because the record showed she "was able to work with most of her alleged symptoms" at the medium to heavy level of exertion until August 2011, "which suggests they are not as limiting as she claims." AR 16. But plaintiff has not alleged an inability to work prior to August 2011. *See* AR 10. In addition, as pointed out by plaintiff, the ALJ ignores – or at the very least fails to mention – that plaintiff's testimony and reports to medical sources indicate she had trouble performing that work without also employing significant accommodations due to her symptoms, and that she was unable to continue working past the above date due to those symptoms. *See* AR 39-43, 128, 409.

The ALJ also found plaintiff to be less than fully credible because her activities of daily living showed "less than disabling restrictions." AR 16. Specifically, the ALJ stated:

> . . . In contrast to her allegations of debilitating fatigue and muscle pain, the claimant can drive, perform most household chores, prepare food, use a computer, and manage her finances (4E; 12F/2). During the period at issue, she was able to walk two miles [sic] day (12F/1); attend a Christmas party with co-workers (10F/9); and travel to Hawaii (14F/1). She also attended at least one, multi-day class in the Feldenkrais physical therapy method, and apparently planned to pursue work in the field (5F7-8).

AR 16. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." *Id.*

REPORT AND RECOMMENDATION - 11

In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Under the second ground in *Orn*, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

The record fails to show plaintiff performed household chores or engaged in other daily activities at a frequency or to an extent that necessarily shows they are transferrable to a work setting or that necessarily contradicts her other testimony. *See* AR 45-47, 125-27, 169-75, 180-81, 188, 201-08, 213, 225, 411, 414. While plaintiff did report to Dr. Gaffield that she "walks a couple of miles every day" (AR 413), it is unclear from that report as to how long that takes her, whether she does that all at once or needs to take breaks or what impact that has on her issue of fatigue, given that she has consistently complained of problems therewith. It also contrasts with other statements plaintiff has made concerning her ability to walk for that long. *See* AR 126, 173. Nor does the evidence in the record indicate the level of activity plaintiff engaged in both when traveling to Hawaii and when she attended her multi-day physical therapy class. Lastly, although the record reveals plaintiff reported attending one Christmas party with co-workers – and that she was able to do so for "the whole 5 hour party" and enjoy herself (AR 402) – this, along with the trip to Hawaii, appears to be isolated events, which do not clearly evince an ability to engage in full-time work activities.

III.    Additional Evidence Submitted to the Appeals Council

Evidence submitted for first time to the Appeals Council is considered to be part of the record the Court "must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Security Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Plaintiff argues the additional evidence she submitted to the Appeals Council –

consisting of a letter she wrote setting forth her reasons as to why she disagreed with the ALJ's decision (*see* AR 240-47), as well as treatment notes and a letter from Dr. Day (*see* AR 468-80) – considered along with the other evidence in the record, calls into doubt the ALJ's step two determination. But because the ALJ already has been found to have committed reversible error in regard thereto, there is no need to decide this issue at this time. The same is true with respect to the plaintiff's argument concerning the ALJ's alleged failure to consider evidence indicating plaintiff received disability payments from a private insurer. *See* AR 324, 326-28, 330-33, 434, 436. That evidence, nevertheless, should be considered on remand as well.

IV.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

REPORT AND RECOMMENDATION - 13

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to plaintiff's fibromyalgia diagnosis, her RFC assessment and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 1, 2015**, as noted in the caption.

DATED this 17 day of April, 2015.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14